UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

ROY EDWARD SHEPHERD[1] and        :
SHIRLEY SHEPHERD                  :
                                  :
            v.                    :        C.A. No. 12-143L
                                  :
AIR & LIQUID SYSTEMS              :
CORPORATION, et al.               :

**MEMORANDUM AND ORDER**

Plaintiffs filed this asbestos personal injury case in Rhode Island Superior Court on

January 26, 2012 against several Defendants.  Plaintiffs' Superior Court Complaint alleges that

the decedent was exposed to "various asbestos containing products and/or machinery requiring

the use of asbestos and/or asbestos-containing products" while working as a Boilertender in the

United States Navy from 1964 to 1977.  (Document No. 1-1 at p. 5).  In discovery, Plaintiffs

identified the particular Navy vessels and facilities where Mr. Shepherd worked and indicated that

he "worked with and around others working with asbestos-containing products and their asbestos-

containing component parts, in the boiler rooms of Naval ships" including, but not limited to,

"gaskets, turbines, steam traps, valves, pumps, packing, boilers and compressors."  (Document

No. 180-2 at pp. 23-24).

On February 29, 2012, Defendant Foster Wheeler LLC ("Foster Wheeler") filed a notice

of removal asserting that "federal officer removal" is appropriate here because Foster Wheeler

---

[1] Although Plaintiffs' last name is spelled "Shepard" in the original Superior Court Complaint, all parties have subsequently used the spelling "Shepherd" in pleadings and thus the Court assumes that "Shepherd" is the correct spelling.  Further, since the time of removal, Mr. Shepherd has passed away and the case is now being pursued by Mrs. Shepherd both personally as to her loss of consortium claim and as personal representative of Mr. Shepherd's Estate.

"manufactured marine boilers and auxiliary equipment for use on Navy ships pursuant to contracts and specifications executed by the Navy" and that in doing so, Foster Wheeler "was acting under an officer or agency of the United States within the meaning of 28 U.S.C. § 1442(a)(1)." (Document No. 1 at p. 2). Foster Wheeler's removal was joined on March 5, 2012 by Air & Liquid Systems Corporation, as successor by merger to Buffalo Pumps, Inc. ("Buffalo Pumps"). (Document No. 9). Buffalo Pumps contends that federal officer removal is proper here because it manufactured and supplied pumps for Navy ships pursuant to vessel-specific contracts with the Navy, in accordance with detailed Navy specifications and/or regulations and subject to detailed and ongoing direction and control by the Navy. Id. at p. 5.

Foster Wheeler's removal was also joined on March 8, 2012 by General Electric Company ("GE"). (Document No. 44). GE contends that removal is proper here because "in the design, manufacture, and sale of marine steam turbines for and to the U.S. Navy, GE was acting under an officer or agency of the United States within the meaning of 28 U.S.C. § 1442(a)(1)." Id. at p. 2. Finally, Foster Wheeler's removal was joined on March 2, 2012 by CBS Corporation f/k/a Westinghouse Electric Corporation ("Westinghouse"). (Document No. 6). Westinghouse contends that federal officer removal is proper because the decedent was exposed to asbestos aboard Navy ships bearing turbines and/or similar equipment which were "designed, manufactured and supplied by Westinghouse under the Navy's detailed direction and control and which included asbestos-containing components only as dictated by the Navy's own plans, specifications and/or regulations." Id. at p. 1.

On March 28, 2012, Plaintiffs moved for remand arguing that Foster Wheeler and GE had failed to allege or establish each necessary element for federal officer removal. (Document No.

137).   The removing Defendants oppose remand.   (Document Nos. 172, 173, 175 and 179).   On

April 24, 2012, Plaintiffs filed a second motion for remand arguing that Buffalo Pumps and

Westinghouse had failed to establish the elements of federal officer removal.   (Document No.

194).   The removing Defendants also oppose the second request for remand.   (Document Nos.

215, 223 and 239).   On May 24, 2012, Plaintiffs' Motions for Remand were referred to me.[2]   A

hearing was held on July 2, 2012.   For the reasons set forth below, Plaintiffs' Motions for Remand

are DENIED.

**Discussion**

Section 1442(a)(1), 28 U.S.C., provides federal subject matter jurisdiction over claims

against "any officer (or any person acting under that officer) of the United States or of any agency

thereof...for any act under color of such office...."   This grant of federal jurisdiction has been

construed to extend to federal contractors acting pursuant to "reasonably precise" government

specifications.   See Boyle v. United Tech. Corp., 487 U.S. 500, 511-512 (1988).   Although the

removing Defendants bear the burden of establishing a legal basis for federal officer removal,

BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers, 132 F.3d 824, 821

(1st Cir. 1997), the Supreme Court has cautioned that the policy favoring federal officer removal

"should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)."   Willingham v.

Morgan, 395 U.S. 402, 407 (1969).

---

[2]   Although Judge Lagueux did not specify if his referral was for a report and recommendation or for
determination, I conclude that it was for determination under 28 U.S.C. § 636(b)(1)(A) since Judge Lagueux has
previously ruled that a Motion for Remand is a nondispositive matter and may be finally determined by a Magistrate
Judge under such provision.   See Blue Cross & Blue Shield v. Korsen, 746 F. Supp. 2d 375, 379 (D.R.I. 2010); and Delta
Dental v. Blue Cross & Blue Shield, 942 F. Supp. 740, 746 (D.R.I. 1996).   See also Hopkins v. Buffalo Pumps, Inc., C.A.
No. 09-181S, 2009 WL 4496053 at *2 (D.R.I. Dec. 1, 2009) (noting that the First Circuit has declined to address the
issue of whether a motion to remand is dispositive or nondispositive within Rule 72 context).

In <u>Mesa v. California</u>, 489 U.S. 121 (1989), the Supreme Court established a three-part test for removal pursuant to 28 U.S.C. § 1442(a)(1).  A federal contractor seeking federal officer removal must demonstrate that (1) it was acting under the direction of a federal officer; (2) it has a colorable federal defense; and (3) that there is a causal connection between the acts taken under federal direction and a plaintiff's claim(s) against it.  <u>See</u> <u>Holdren v. Buffalo Pumps, Inc.</u>, 614 F. Supp. 2d 129, 139-140 (D. Mass. 2009).  One Court has aptly summed up the test as the "Navy made me do it" defense.  <u>Westbrook v. Asbestos Defendants (BHC)</u>, 2001 WL 902642 at *3 (N.D. Cal. 2001).

The well-pleaded complaint rule[3] applicable to federal question removal does not apply to federal officer removal.  <u>See</u> <u>Jefferson County v. Acker</u>, 527 U.S. 423, 430-431 (1999).  Rather, removal under Section 1442(a)(1) is premised on the existence of a federal defense irrespective of how a plaintiff pleads his or her case.  <u>See</u> <u>Machnik v. Buffalo Pumps, Inc.</u>, 506 F. Supp. 2d 99, 103 n.1 (D. Conn. 2007).  Thus, asbestos plaintiffs' attempts to circumvent federal officer removal by the use of general disclaimers or other artful pleading tactics have generally failed. <u>See</u>, <u>e.g.</u>, <u>Despres v. Ampco-Pittsburgh Corp.</u>, 577 F. Supp. 2d 604, 607-608 (D. Conn. 2008).

Plaintiffs contend that remand to Superior Court is required because the removing Defendants have failed to show that there is a causal nexus between an explicit federal directive and Plaintiffs' asbestos-related injury, or that their alleged federal government contractor defenses are colorable.  (Document Nos. 137-1 and 194-2).  The removing Defendants counter that they

---

[3] The well pleaded complaint rule applies to federal question removal under 28 U.S.C. § 1441.  <u>See</u> <u>Narragansett Indian Tribe v. State of Rhode Island</u>, 296 F. Supp. 2d 153, 159 (D.R.I. 2003).  It provides that the federal question upon which removal is premised must be ascertainable on the face of the complaint and "cannot arise merely as a defense."  <u>Id.</u>

do have "colorable" federal officer defenses because Plaintiffs' claims of defective design and failure to warn arise from products they supplied to the Navy pursuant to detailed and mandatory specifications, thus at the direction of federal officers.

Plaintiffs' Superior Court Complaint that was removed contains both defective design and failure to warn claims. (Document No. 1-1). In particular, the Complaint alleges that Defendants mined, milled, processed, manufactured, designed, tested, assembled, fashioned, fabricated, packaged, supplied, distributed, delivered, marketed and/or sold asbestos-containing products which were "defective," inter alia, because they are "inherently dangerous" and "failed to carry proper, adequate and correct warnings." (Document No. 1-1 at pp. 6-7). Plaintiffs also allege that such products were "not of merchantable quality" and "not fit and safe for their known and intended purposes and uses." Id. at p. 8.

Despite these broadly worded claims in the Complaint, Plaintiffs' counsel asserts in the Motions to Remand that the sole claims against the removing Defendants are state law claims that they failed to warn Mr. Shepherd about asbestos hazards associated with their products and claims, in a footnote, that Plaintiffs are "not pursuing any claim of design defect or manufacturing defect." (Document No. 137-1 at p. 7 and fn.2). Thus, Plaintiffs focus their remand arguments solely on whether the removing Defendants have properly removed a failure to warn claim and do not address the propriety of removal of a defective design claim.

"Whether or not removal was proper is determined 'on the basis of claims in the state court complaint as it exists at the time of removal....'" Faulk v. Owens-Corning Fiberglass Corp., 48 F. Supp. 2d 653, 657 (E.D. Tex. 1999) (quoting Cavallini v. State Farm Mut. Auto Ins., 44 F.3d 256, 264 (5th Cir. 1995)). "Moreover, once a defendant properly removes a case to federal court,

a plaintiff may not defeat that removal by simply amending the complaint." Id. at 658.  Here,

Plaintiffs have not amended, or moved to amend, the Complaint originally removed from Superior

Court.  Plaintiffs also have not moved for dismissal of any defective design claims contained in

their Complaint or offered to stipulate to such dismissal.  As noted, Plaintiffs' counsel simply

notes in a footnote that Plaintiffs are not pursuing any claim of design defect or manufacturing

defect.  Although Plaintiffs' Complaint does allege a failure to warn theory, it is very broadly

drafted and is reasonably construed to also include other potential theories of recovery including

defective design.  See Contois v. Able Indus., Inc., 523 F. Supp. 2d 155, 164-165 (D. Conn. 2007)

(construing similar language in an asbestos complaint to include a defective design claim and

noting that a case is "properly removable to federal court as long as [defendants] have a military

contractor defense to any of the plaintiff's claims").  Accordingly, the Court will evaluate the

propriety of removal of Plaintiffs' asserted claims of both defective design and failure to warn.

　　　This Motion boils down to two primary issues:[4]  (1) what amount of evidence must a

removing defendant present to make out a colorable federal contractor defense; and (2) does the

evidence presented by the removing Defendants in this case meet that standard.  As evidenced by

the parties' competing legal memoranda, there is a split in authority as to the former issue and no

controlling precedent to guide this Court.  See Hagen v. Benjamin Foster Co., 739 F. Supp. 2d

770, 777-778 (E.D. Pa. 2010) ("At its essence, the split in authority boils down to an argument

over what a defendant must proffer to defeat a plaintiff's motion for remand.").  In Hagen, District

---

[4]  In their Reply, Plaintiffs alternatively contend that Buffalo Pumps' Opposition to their Second Motion to Remand filed on May 10, 2012 was three days late and should be rejected as untimely.  (Document No. 235 at p. 2). However, the Court's Electronic Case Filing system, which calculates filing deadlines, notified the parties that responses to the Motion were "due by 5/11/2012" and thus Buffalo Pumps' Opposition (Document No. 223) was timely filed.

Judge Robreno, who presides over MDL-875 – the multidistrict asbestos products liability litigation – reviewed the law and the conflicting precedent, and held that "a defendant is entitled to removal under Section 1442(a)(1) where the defendant identifies facts which, viewed in the light most favorable to the defendant, entitle him or her to a complete defense." 739 F. Supp. 2d at 778; see also Vedros v. Northrop Grumman Shipbuilding, Inc., C.A. No. 2:11-67281-ER, 2012 WL 3155180 at *5 (E.D. Pa. Aug. 2, 2012) (Robreno, D.J.). I find the standard adopted in Hagen to be persuasive and reasonable since it presents a standard which requires a removing defendant to show that its federal contractor defense is factually supported, i.e., "colorable," but does not go so far as to require a defendant to prove its defense in order to secure removal. See Thompson v. Crane Co., Civil No. 11-00638 LEK-RLP, 2012 WL 1344453 at *20 (D.Ha. April 17, 2012) ("Hagen is well reasoned, and this Court finds it to be particularly persuasive because it comes from the MDL Court, which has dealt with thousands of similar cases from across the country."). In fact, when the Judicial Panel on Multidistrict Litigation recently discontinued the transfer of tag-along asbestos actions to MDL No. 875, it observed that the judges presiding over future asbestos injury cases "will almost certainly find useful guidance in the many substantive and thoughtful rulings that have been issued during the lengthy course of the multidistrict proceedings" and made specific reference to several including the Hagen decision on federal officer removal. See In re: Asbestos Products Liability Litigation (No. VI), MDL No. 875, 830 F. Supp. 2d 1377, 1379 and n.5 (JPML Dec. 13, 2011). With the legal standard in mind, I now turn to the evidence relied upon by the removing Defendants.

A.     **Buffalo Pumps**

Buffalo Pumps relies primarily upon the Affidavits of Martin K. Kraft; Roger B. Horne, Jr.; David P. Sargent, Jr.; and Samuel A. Forman, M.D.[5]  According to his Affidavit, Mr. Kraft has been employed by Buffalo Pumps since 1980 and is presently the Vice President of Manufacturing.  (Document No. 223-2).  Mr. Kraft avers that the manufacture of pumps for use on U.S. Navy vessels is governed by "an extensive set of general and specific federal standards and specifications, chiefly military specifications known as 'MilSpecs'" and that these "MilSpecs governed all aspects of a pump's design and construction and specified the materials to be used" including the requirement that "[p]ump casing joints shall be made up using compressed asbestos sheet gaskets."  Id. at p. 2.  He also avers that the "Navy specifications or other technical documents identified in applicable contract documents required Buffalo Pumps to submit for approval and acceptance by the federal government drafts of any manuals, drawings or other written materials required to be provided with regard to pumps it manufactured for the Navy."  Id. at p. 4.  Further, he avers that the pumps manufactured for the Navy were "custom-built" for a vessel or class of vessels pursuant to "detailed and precise Navy specifications" and subject to "shockproofness requirements" to withstand combat conditions.  Id. at p. 3.

Buffalo Pumps also submits the Affidavit of Roger B. Horne, Jr., a retired Navy Rear Admiral with an expertise in ship design and naval engineering.  Admiral Horne testifies that, during his Navy career, he was "responsible for maintaining naval ship military specifications and

---

[5]  Plaintiffs contend that the Court should not consider any of the evidence presented in support of Buffalo Pumps' Opposition since it was not cited in its Notice of Joinder of Removal.  (Document No. 235 at p. 4).  However, Section 1446(a), 28 U.S.C., only requires a removing party to file a notice containing a "short and plain statement of the grounds for removal" which Buffalo Pumps and the other removing Defendants did in this case.  Additionally, Plaintiffs have provided no persuasive authority for the proposition that a removing defendant has to cite all evidence supporting removal in its Notice of Removal in order to rely upon it in response to a Motion to Remand.

for monitoring compliance with the specifications by all vendors and contractors of naval equipment." (Document No. 223-6 at p. 2). He further avers that "[p]umps built for Navy vessels, including Buffalo Pumps' pumps, were manufactured according to detailed specifications prepared, written and issued exclusively by, and plans approved by, the Navy." Id. at p. 4. Finally, he avers that "a manufacturer such as Buffalo Pumps would not have been permitted to include a warning regarding asbestos in an equipment manual or on a product label" because the "Navy's detailed specifications did not leave room for individual manufacturers to make determinations about the inclusion of a warning." Id. at p. 6. Similarly, David P. Sargent, Jr., another retired Navy Rear Admiral with ship engineering expertise, testifies by Affidavit that manufacturers such as Buffalo Pumps "would not have been permitted, under the specifications...to vary or to deviate in any respect from the Navy specifications in supplying equipment, including affixing any type of warning or caution statement to equipment intended for installation in a Navy ship, beyond those specifically required by the Navy without prior discussion and express approval by the Navy." (Document No. 223-16 at p. 26).

Finally, Buffalo Pumps relies upon the Affidavit of Samuel A. Forman, M.D., a medical doctor specializing in occupational medicine who served in the Navy and has conducted historical research regarding "Navy knowledge and practice in industrial hygiene, including its awareness of and response to health hazards of asbestos." (Document No. 223-51 at p. 5). He avers that the "Navy's extensive and evolving knowledge of the hazards of exposure to asbestos and the means to control those hazards were weighed by the Navy against the benefits provided by its use" and that the "Navy chose to address long-term workplace health issues in the course of training for various trades and jobs, rather than using labeling or other written materials to accompany

products into the workplace." Id. at pp. 31, 32.  Further, Admiral Sargent testified that the presence of asbestos was "ubiquitous in Navy environments" and that "the Navy would not have permitted equipment suppliers to place asbestos-related warnings on packaging or containers for pumps or related parts or items supplied during the 1940s, 1950s, or 1960s" or to place such warnings in any accompanying literature or documentation during that time frame.  (Document No. 223-16 at pp. 28-29).

Plaintiffs counter with the Affidavit of Arnold P. Moore, a retired Navy Captain with naval engineering experience.  (Document No. 194-3).  Captain Moore was also employed in the private sector for nearly twenty-five years as an engineer for a naval defense contractor.  Id. at p. 2.  He asserts that "the Navy relied heavily upon its equipment manufacturers to identify hazards associated with their products" and that "hazards associated with exposure to asbestos and asbestos containing materials were not exempt."  Id. at p. 4.

Plaintiffs also rely upon excerpts from the 2004 deposition of Mr. Kraft in an asbestos case pending in state court in Texas.  (Document No. 194-4).  Mr. Kraft testified that the manuals provided to the Navy by Buffalo Pumps did not contain any cautions or warnings concerning the asbestos-containing component parts.  (Document No. 194-6 at p. 2).  Further, Mr. Kraft testified that he was not aware of any prohibition that would have precluded Buffalo Pumps from including a warning concerning exposure to asbestos on the nameplate attached to the pump.

(Document No. 194-7 at p. 2).[6]  Finally, he stated that there was a Navy specification regarding what information Buffalo Pumps provided in its technical manuals.  Id.

In O'Connell v. Foster Wheeler Energy Corp., 544 F. Supp. 2d 51 (D. Mass. 2008), Buffalo Pumps successfully relied upon affidavits from these same four individuals (Mr. Kraft, Admiral Horne, Admiral Sargent and Dr. Forman) to defeat a motion for remand.  Judge Stearns thoroughly reviewed and discussed this evidence and concluded that it was enough to "clearly establish a plausible federal contractor defense."  Id. at p. 55.  In particular, he found that the Horne and Sargent Affidavits "reasonably establish that the specifications for the pump component supplied to the Navy by Buffalo Pumps were detailed, precise, and under the Navy's pervasive control" and that the "Navy insisted on a meticulous review and approval process for written materials accompanying components supplied to its ships."  Id.  Thus, Judge Stearns concluded that Buffalo Pumps' removal was warranted under the federal officer removal statute and denied a motion to remand.

Based on this precedent and applying the evidentiary standard enunciated by Judge Robreno in the Hagen case, I conclude that Buffalo Pumps has presented sufficient evidence to establish at least a colorable federal defense to Plaintiffs' claims in this case.[7]  Moreover, such

---

[6] In Faddish v. Gen. Elec. Co., C.A. No. 09-70626, 2010 WL 4146108 at **8-9 (E.D. Pa. Oct. 20, 2010), Judge Robreno considered the government contractor defense in the context of a contractor defendant's summary judgment motion and adopted the "prevailing view...that an independent contractor does not have to show an express government prohibition on all warnings, but rather, must establish that the government 'exercised its discretion' regarding warnings to be placed on defendant's product."  Here, the removing Defendants are not subject to the burdens of Rule 56 and the requirement that the evidence must be viewed in the light most favorable to the non-moving party.  Rather, under Hagen, the facts in this removal context must be viewed in the light most favorable to the removing defendant and are sufficient at this stage to sustain federal officer removal.

[7] Buffalo Pumps contends that Plaintiffs' initial Motion to Remand was only directed at the removals filed by GE and Foster Wheeler and thus it is untimely as to Buffalo Pumps.  See 28 U.S.C. § 1447(c).  Plaintiffs counter that lack of subject matter jurisdiction can be raised "at any time" and thus their Second Motion to Remand is timely and, in any event, remedies any deficiency in the initial Motion.  Id.  Since the Court has addressed the propriety of Buffalo

evidence sufficiently demonstrates a causal nexus between Plaintiffs' claims and the Navy's control over the design and accompanying manuals and labeling of the pumps supplied to it by Buffalo Pumps.  Finally, this conclusion is supported by similar decisions, based upon evidence from these same affiants, finding that Buffalo Pumps had satisfied the requirements for federal officer removal.  See, e.g., Thompson v. Crane Co., supra; DeMatties v. Acmat Corp., No. 3:08CV116 (WWE), 2008 WL 4735145 (D. Conn. Oct. 27, 2008); Contois v. Able Indus., Inc., 523 F. Supp. 2d 155 (D. Conn. Nov. 13, 2007); and O'Connell v. Foster Wheeler, supra.

### B.   General Electric

GE relies primarily upon the Declarations of David Hobson, Ben J. Lehman, and Lawrence Stillwell Betts, M.D.  According to his Declaration, Mr. Hobson was employed by GE from 1969 until his retirement in 1996 and, during his GE career, he held various product support and managerial positions involving steam turbines intended for installation aboard Navy vessels. (Document No. 44-2).  He has a Marine Engineering degree and served as an engineering officer in the Coast Guard prior to his employment with GE.  Id.  Mr. Hobson testifies that GE manufactured turbines for the Navy pursuant to Government contracts and that, "[d]uring all aspects of its Navy turbine work, GE performed under the immediate supervision of the Navy" "through contract documents, design construction drawings, written specifications, and personal oversight of GE's work by engineers and machinery specialists employed by the U.S. Navy." Id. at p. 4.  He also avers that "the Navy had precise specifications, practices, and procedures in place that governed the content of any communication affixed to machinery purchased by the Navy"

---

Pumps' removal on the merits, there is no reason to address this moot procedural issue.

and opines that "the Navy, not individual equipment manufacturers like GE, exercised absolute authority to determine precisely what hazards aboard its ships would be subject to warnings and the format and content of any such warnings." Id. at pp. 11-14.

GE also submits the Declaration of Ben J. Lehman.  According to his Declaration, Mr. Lehman is a retired Navy Rear Admiral with a naval architecture and marine engineering background. (Document No. 44-3).  While in the Navy, Mr. Lehman was a Ship Superintendent at two Naval shipyards. Id. at p. 1.  He also worked for two years as an engineer with GE and later as an Engineering Executive with two "major ship building companies." Id. He testifies that the Navy had complete control over every aspect of equipment used on Navy ships including instructions and warnings. Id. at p. 2.  He also opines that "equipment suppliers were prohibited from providing any warnings on or to accompany equipment supplied to the Navy without the consent and approval of the Navy" and that, given the performance needs of Navy ships, certain types of warnings, including warnings associated with asbestos, were "simply not approved by the Navy." Id. at p. 3.

Finally, GE submits the Declaration of Lawrence Stillwell Betts, M.D.  Dr. Betts is a retired Navy Captain and medical officer.  (Document No. 44-4).  He is Board-certified in Occupational Medicine and Industrial Hygiene. Id. at p. 1.  Dr. Betts opines that "the Navy was well aware of the health hazards associated with the use of asbestos from the early 1920s" and that "there was nothing about the hazards associated with the use of asbestos-containing products on a marine steam turbine on United States Navy ships known by a turbine manufacturer, like [GE], that was not known by the...Navy." Id. at pp. 17, 20.  He also opines that "[a]ny suggestion that [GE] was free to depart from Navy-approved manuals is incorrect." Id. at pp. 23-24.

Plaintiffs counter with the Affidavit of Arnold P. Moore, a retired Navy Captain with naval engineering experience. (Document No. 194-3). Captain Moore was also employed in the private sector for nearly twenty-five years as an engineer for a naval defense contractor. Id. at p. 2. He asserts that "[t]he Navy relied heavily upon its equipment manufacturers to identify hazards associated with their products" and that "hazards associated with exposure to asbestos and asbestos containing materials and equipment were not exempt." Id. at p. 4.

Plaintiffs also rely upon the Declaration of Barry J. Castleman. (Document No. 142). Mr. Castleman is an engineer with a Doctor of Science Degree in Health Policy. Id. at p. 1. He opines, based upon his research, that "[w]hile GE took steps to protect its own workers from the hazards of asbestos, it did not provide warnings" to either commercial or government end-users. Id. at p. 3. He also indicated that he had "never seen any document discussing the Navy prohibiting GE from warning about the hazards of asbestos." Id. at p. 4.

In Kirks v. Gen. Elec. Co., 654 F. Supp. 2d 220 (D. Del. 2009), GE successfully relied upon affidavits from these same three individuals (Mr. Hobson, Admiral Lehman and Dr. Betts) to defeat a motion for remand. Judge Robinson thoroughly reviewed and discussed this evidence and concluded that the evidence presented by GE was sufficient to establish "federal officer removal jurisdiction." Id. at p. 225. In particular, he found that these Affidavits satisfied GE's burden to show that the plaintiffs' claims were based upon GE's conduct "acting under" the office of the Navy and its officers, and "raised a colorable federal [contractor] defense." Id. at p. 224. He also specifically found that "the three affidavits satisfy the requirement that GE sufficiently demonstrate a causal nexus between plaintiffs' failure-to-warn claims and the Navy's control over the warnings provided by GE on its turbines." Id. at p. 225. Thus, Judge Robinson concluded that

-14-

GE's removal was warranted under the federal officer removal statute and denied the plaintiffs' motion to remand.  Id. at p. 225-226.

Based on this precedent and applying the evidentiary standard enunciated by Judge Robreno in the Hagen case, I conclude that GE has presented sufficient evidence to establish at least a colorable federal defense to Plaintiffs' claims in this case.  Moreover, such evidence sufficiently demonstrates a causal nexus between Plaintiffs' claims and the Navy's control over the design and accompanying manuals and labeling of the steam turbines supplied to it by GE. Finally, this conclusion is supported by similar decisions, based upon evidence from these same affiants, finding that GE had satisfied the requirements for federal officer removal.  See, DeMatties v. Acmat Corp., supra; Morgan v. Bill Vann Co, Inc., C.A. No. 11-0535-WS-B, 2011 WL 6056083 (S.D. Ala. Dec. 6, 2011); Vedros v. Northrop Grumman, supra; Hagen v. Benjamin Foster Co., supra; Lewis v. Asbestos Corp, Ltd, C.A. No. 10-650 FLW, 2012 WL 3240941 (D.N.J. Aug. 7, 2012); and Machnik v. Buffalo Pumps, supra.  See also Briggs v. Air & Liquid Systems Corp., No. 2:11-CV-63521-ER, 2012 WL 975875 (E.D. Pa. Feb. 13, 2012) (noting that the Hobson, Lehman and Betts Affidavits had been "previously ruled sufficient to establish the availability to GE of the [federal contractor] defense").

### C.    Foster Wheeler / Westinghouse

Foster Wheeler, a manufacturer of marine boilers and auxiliary equipment for Navy vessels, and Westinghouse, a manufacturer of turbines and related equipment for Navy vessels, make arguments in opposition to remand that are very similar to those successfully made by GE and Buffalo Pumps.  In fact, like GE, Foster Wheeler relies upon Affidavits from Admiral Lehman and Dr. Betts.  In addition, Foster Wheeler relies upon the Affidavit of J. Thomas

Schroppe.  Mr. Schroppe has a marine engineering degree and worked for Foster Wheeler from 1962 until his retirement in 1999.  (Document Nos. 175-4 and 175-5).  He avers that the "[m]arine boilers supplied by Foster Wheeler to the U.S. Navy were highly specialized" and designed and manufactured in strict compliance with Navy specifications.  (Document No. 175-5 at p. 2).  He also testifies that the "Navy exercised intense direction and control over all written documentation to be delivered with its naval boilers" and that "Foster Wheeler would not be permitted, under the specifications, associated regulations and procedures, and especially under actual practice as it evolved in the field, to affix any type of warning or caution statement to a piece of equipment intended for installation onto a Navy vessel, beyond those required by the Navy." (Document No. 175-4 at pp. 4-5).

Moreover, like Buffalo Pumps, Westinghouse relies upon Affidavits from Admiral Horne and Dr. Forman.  In addition, Westinghouse offers the Affidavit of Mr. James M. Gate.  Mr. Gate has a marine engineering degree and formerly worked for Westinghouse's Marine Division. (Document No. 173-1).  Mr. Gate avers that Westinghouse manufactured and installed turbines in compliance with detailed military specifications which, in part, required the use of asbestos-containing thermal insulation in relation to the equipment.  Id. at p. 3.  He also testifies that the "Navy had precise specifications as to the nature of any communication affixed to equipment supplied by Westinghouse to the Navy" as well as to the nature of written materials to be delivered with its turbines, and that Westinghouse would not have been permitted "to affix any type of warning or caution statement to equipment intended for installation onto a Navy vessel, beyond those required by the Navy, without prior discussion with, and approval by, the Navy." Id. at p. 7.

Based on my prior analysis of the parallel evidence presented by Buffalo Pumps and GE, as well as the previously discussed precedent, and applying the evidentiary standard enunciated by Judge Robreno in the <u>Hagen</u> case, I conclude that Foster Wheeler and Westinghouse have also presented sufficient evidence to establish at least a colorable federal defense to Plaintiffs' claims in this case. Moreover, such evidence sufficiently demonstrates a causal nexus between Plaintiffs' claims and the Navy's control over the design and accompanying manuals and labeling of the marine equipment supplied to it by Foster Wheeler or Westinghouse. Finally, this conclusion is supported by similar decisions, based upon evidence from these same affiants, finding that Foster Wheeler and Westinghouse had satisfied the requirements for federal officer removal. <u>See</u>, <u>e.g.</u>, <u>Hagen v. Benjamin Foster Co.</u>, <u>supra</u> (holding that Foster Wheeler had established federal officer removal jurisdiction based, in part, on Affidavits from Mr. Schroppe, Admiral Lehman and Dr. Betts); and <u>Morgan v. Bill Vann Co. Inc.</u>, <u>supra</u> (holding that Westinghouse had established federal officer removal jurisdiction based, in part, on Affidavits from Mr. Gate, Admiral Horne and Dr. Forman).

**Conclusion**

For the foregoing reasons, Plaintiffs' Motions to Remand (Document Nos. 137 and 194) are DENIED.

SO ORDERED

  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
November 20, 2012

-17-